Page number 20-1315 et al. Louisiana Public Service Communication Petitioner versus Federal Energy Regulatory Commission. Mr. Fontham for the petitioner, Ms. Berry for the respondent. Counsel, good morning. Please proceed. May it please the court, Mike Fontham for the Louisiana Commission. This case boils down to FERC's different treatment of this case from its prior decision in the fourth bandwidth proceeding, which held that even if prior cases have been litigated to a full conclusion, and even if every party in those prior cases had the opportunity to litigate the issue, seek rehearing on the issue, and if they had sought rehearing, taken a request for judicial review, that you would still, you're still required to reopen the prior cases and correct the inputs. That decision was issued in opinion 545 preceding this decision, and it caused a great significant reduction to Louisiana consumers in the receipts for the bandwidth. In this case, and I might say this, that prior case involved sale leaseback, the Waterford 3 sale leaseback, the same asset. In that case, FERC reopened the issue of amortization of that sale leaseback, which is basically depreciation, and corrected the prior inputs in order to change a faster depreciation rate to a slower depreciation rate, taking costs out of the bandwidth. Now in this case, FERC's final ruling was that the sale leaseback accumulated deferred income taxes needed to be in the bandwidth because the formula required it. This case started in 2010, just like the fourth bandwidth proceeding started in 2010, but it was decided later because of an abeyance. FERC's rule with regard to going back was a surprise to us, and it certainly, I think, was a surprise to everybody else. We had requested in our case that the relief should at least start when we filed the case. What is the relief? What is the relief? The relief? Yes, Your Honor. Well, the tariff violation was true of all the years starting in 2005. FERC gave us relief only from 2010 forward. Excuse me. What is the consequence of the relief? Is it to increase the cost of production? Well, Your Honor, this is a bandwidth. I don't think you have sat on a bandwidth case, but basically, the higher your costs are in the bandwidth, the more you will receive from a low-cost company. If you're a high-cost company, then a low-cost company may have to pay you to bring you within the bandwidth. And when those payments come in from the other companies, if you won, they would come into the Louisiana arm of energy. What does the Louisiana arm of energy do with those payments? Gives it to consumers. All of these bandwidth costs or receipts are flowed through to consumers because under Supreme Court rulings, preemption requires a state commission to pass through to consumers any costs that's assessed by FERC or any refund that is given back by FERC. So, you know, all the consumers have to pay the cost of energy. And if they're entitled to a And how much money are we talking about in terms of projected payments from the other companies? Well, Your Honor, the amount changed every year. I believe, and this is ballpark, please understand. I believe it would be on the order of probably $20 million for 2005 and then reducing down to about... The $20 million is the component that would be added to getting the cost of production. That's not my question. My question is, what effect would that have, if any, on the amount of contribution from the other entities? Your Honor, that's what I was addressing. I was trying to address, after it flows through all the permutations of bandwidth, the amount that would come out. And, you know, the amount of ADIT is maybe over $100 million. So then the amount of the ADIT provides, you know, should have received a rate of return of $10 million or so. If it was $20 million in 2005, it was gradually reduced because the sale leaseback was being amortized. Where can I find in the record support for what you've just said, that quantified, you know, quantification of the effect on Louisiana consumers of electricity? Where in the record can I find it? Well, Your Honor, I don't... I mean, it's in the record because they did provide a refund in a compliance refund report for the 2010 forward. And then it would be for the prior years, they obviously have not made compliance refund reports. And, you know, you have to have a... the amount into a model that then goes through all kinds of permutations and you find what the result is. But we're talking about... My question, sir, is where in the record? Can you cite a page? Can you cite something in the record that quantifies this number? I do not believe there is anything in the record that quantifies this number for the prior proceedings. Then how do we know that you have standing? Oh, you know that I have standing, Your Honor, because if it's one penny of additional cost, I mean, the lowest cost company already paid in those cases. Energy Louisiana was among the highest cost companies. It received in those cases. So we're at the margin. And if any additional cost is added to Louisiana's cost, it receives money. Now, there's no doubt in the record... But even if... I don't want to monopolize the argument, but I'm not getting an answer that makes sense to me. Even if this increased the cost of production, that does not necessarily mean that there's going to be payments to Louisiana Entergy because there's the plus 11, minus 11% difference. They were already at, in all of those cases, the point where the cost exceeded the bandwidth already. Okay. So we're at plus or minus 11%. A payment has been made. Should an additional payment be made? Because anything more adds to your cost. If your costs go up from that point, you're going to get a payment, all other things being equal. So, Your Honor, I don't... I mean, we're not saying we're starting right here at nothing. We know that they would get a payment because they're at the margin already. And if you add a cost at that point, it's going to immediately... I think the effect would be 80%. That has been worked out over many bandwidth cases that you're going to get a higher payment because you incurred this cost. Okay, fine. Why don't you go on with the rest of your argument? Okay. Well, the point is that they did not permit, including these costs in the prior cases. I don't think my opponent will dispute that it would have an effect, Your Honor. And the reasons they gave were that the LPSC did not seek rehearing of a hearing order, the third hearing order, which said we would get relief from 2010 forward. And when we requested rehearing to get that result, FERC had not issued this Opinion 545 that says you can go back. But a hearing order is subject. It's not final. It's an interlocutory order. The court would never review a hearing order. And it's not listed in FERC's regulations of the type of order that you have to review. The second one, they say we should have sought rehearing over. And I see my time's out. I could probably do this in a minute. Go ahead and finish your thought if there are no more questions. Yes, Your Honor. The second one they said we should have sought rehearing of on the issue of scope of remedy was an order denying relief. Well, we did seek rehearing of the order denying relief. The only thing in that order that talked about scope of remedy was procedural background where they went through all their prior orders in the case. And as soon as they granted relief, we sought rehearing on the scope of relief. So that does not in any way, shape or form justify FERC's refusal to go backward. And the only thing left is we tried to litigate the issue in the first bandwidth case. And FERC made a legal error and admitted legal error in that case and kicked it out of the bandwidth and then precluded us from re litigating in the next two cases under their policy against re litigation. So an admitted legal error on the merits is the reason why they can't go back in that. All right. No, Mr. Fund. If there are no questions, we'll give you a couple minutes and reply. Miss Perry. May it please the court, Lona Perry for the Federal Energy Regulatory Commission. The 2015 order that the commission issued in this case was a final order on the issue of whether there would be any recovery whatsoever in this proceeding with regard to the first three bandwidth cases. The 2015 order conclusively stated in three separate times that should there be a determination that the accumulated deferred income taxes should be included in the bandwidth calculation, that it would be effective prospectively from the effective date of the fourth bandwidth proceeding. And that was all. And so that conclusively determined that there would be no recovery whatsoever for the first three bandwidth proceedings. The opinion 545 is there. As the petitioner stated in their reply brief at 15, the 545 opinion was issued on the same day as the 2015 order. Accordingly, if it was truly a revelation as to the commission's policy on the backward looking bandwidth proceedings, the Louisiana Commission had every opportunity to file for rehearing of the 2015 order on that basis. And furthermore, opinion 545 itself said quite clearly, and the Louisiana Commission acknowledged this in their May 2020 request for respect to issues that had actually been litigated in prior bandwidth proceedings, that there would be no reopening of those issues that had been actually litigated. And you can see this at paragraph 153 of opinion 545, which is in Louisiana's supplemental appendix at 451 to 452. Therefore, to the extent that Louisiana is relying on 545 as essentially good cause for having failed to seek rehearing of the 2015 order, for both of those reasons, it 545 doesn't suffice as any excuse for having failed to seek rehearing of what was a very holding in the 2015 order, that there would be no recovery in this proceeding for the first three bandwidth. What was FERC's rationale for that? First rationale in the 2015 order was what was the fact that Louisiana requested specifically in its request for in the 2014 hearing order, the commission set this proceeding for hearing. And the commission said in that order at paragraph 50, that the issue had been decided as to the first two bandwidth proceedings, but for everything after that, it had not yet been that it noted the finding that it had been determined for the first two bandwidth proceedings, but not going forward. And it specifically said, rehearing should be granted only to make clear that a potential remedy and refund will not be limited to section 206 relief, but will have application from 2010 forward. And that's the joint appendix at 380. They repeat the same at 381. And they repeat the same at 383 is specifically, Louisiana specifically asked for a ruling on the scope of the remedy and the scope of the remedy that they specifically asked for was from 2010 forward. So in the 2015 order, the commission granted the request to rule on the scope of the remedy, and they ruled on the scope of the remedy by giving Louisiana exactly what it asked for, which was, it would be effective from 2010 forward, which precludes any recovery for the preceding bandwidth. Proceedings. So they couldn't have applied for rehearing on that issue. Certainly they could have your honor, because they weren't, they weren't aggrieved. They got what they asked for. They, they were not aggrieved because they got what they asked for, but it was a final decision on that issue. So the point being that they cannot now seek, effectively seek rehearing on that issue in May of 2020, when it was finally decided in 2015, either they were not aggrieved by getting what they wanted, or if they were aggrieved, having now seen 545, which was issued on the same day, if they now realized that they were actually aggrieved by this determination, they had the full 30 day statutory rehearing period in which to seek rehearing of the 2015 order. So either they were not aggrieved, and there was, this is a final order, or they were aggrieved but failed to seek rehearing, and this is still a final order. But they, under no circumstances are they in a position where in 2020, they can revisit this determination that was made in 2015. When did this bandwidth stuff end? I believe that the, that it, the agreement between, the interagency agreement between these entities ended, Mr. Fontham will know better, but I believe it was 2018 that it was finally, the agreement was finally terminated. Okay. If there are no further questions, thank you. All right, Mr. Fontham, why don't you take two minutes. Thank you, Your Honor. The issue, you know, of what we could have done is an interesting issue, I think, but we had, we had not received when we got the 2015 rehearing order, which gave us what we asked for, because when we asked, we didn't know this policy on bandwidth proceedings that you can open finally litigated cases. Okay, so we asked at least give us relief until starting in 2010. In a 206, you ordinarily would be cut off after 15 months of refunds. Until FERC decided the issue, so they gave us that. Well, then they come out with this hearing order, and as counsel just said, if we ever grant relief, we will grant it from 2010 forward. That first of all doesn't say anything about the past. And second of all, it's a hearing order. That it's it's in that category of cases that the court is very familiar with, that it could be mooted by a final ruling. If FERC would deny any relief. There was nothing to review at that point, it was a hypothetical. We can't appeal. That's the way that's the way that's isn't that the way you argued it in terms of a hypothetical by you, I mean, Louisiana Commission, if you look at JA 380, and then you compare it with what FERC said, it looks like they actually copied your submission and put it into an order. That's true, your honor, but it's not listed as an order you are supposed to request rehearing for in FERC's regulation. And it's not the type of an I mean, they gave us what we wanted. That's true. But when we asked for that, we didn't know they were going to have a new rule that reopened last prior proceedings. And you know, the the rehearings there were primarily devoted to energy asking for a dismissal of the case, which FERC denied. Energy said, well, this is raised judicata because of prior rulings. And that's the reference that counsel refers to about whether it was litigated before or not litigated before. But the fact of the matter is it all risks what the litigation before relates to is a legal error, admitted legal error. And you know, so Louisiana is cut off from relief. And Judge Randolph, I didn't hear counsel deny that there's an effect. There is an effect. So if there are no more questions, we have your arguments. And Madam Clerk, if you'd close court.
judges: Henderson, Walker, Randolph